IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| L. et al, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | NO. 08-5194 |
| | : | |
| v. | : | |
| | : | |
| BOYERTOWN AREA SCHOOL | : | |
| DISTRICT et al, | : | |
| | : | |
| Defendants. | : | |

**OPINION AND ORDER**

Slomsky, J.                                                February 24, 2009

**I. Introduction.**

On October 31, 2008, Plaintiffs B.L., a minor, and D.N., as parent of B.L. and in her own right, filed a complaint against Defendants Boyertown Area School District, Principal Christopher Iacobelli, and Pennsylvania State Trooper Brian M. Shpock.  Defendants Boyertown Area School District ("BASD") and Iacobelli filed a motion to dismiss on January 20, 2009, to which Plaintiffs filed a response on February 3, 2009.

Defendants BASD and Iacobelli's (collectively, "Moving Defendants") Motion to Dismiss is before the Court.  For reasons that follow, the Court grants the Motion to Dismiss. Plaintiffs, however, will be permitted thirty (30) days in which to amend their complaint.

**II.  General Background.**

B.L. is a special needs student who attended Washington Elementary School, part of the Defendant Boyertown Area School District.  (Compl. ¶¶ 1, 9).  He had an Individualized

1

Education Plan ("IEP") created under the Individuals with Disabilities Act ("IDEA") and

supplemental Behavioral Intervention Plan ("BIP").  (Id. ¶¶ 13, 27).  In addition to assisting B.L.

with his academic needs, these plans were created to address B.L.'s behavioral problems, which

included frequent use of derogatory and/or inappropriate remarks.  (Id. ¶22).  Among other

things, the BIP provided that if B.L.

> hurts, uses profanity, or threatens others, he will be immediately sent to the
> Principal.  The Principal will then:
> - investigate the situation
> - take any or all of the following actions depending on the situation:
>     - ask the school counselor to talk with B.L.
>     - assign a consequence such as (but not limited to) loss of recess,
>       privileges, 6th grade detention, ISS, OSS
>     - other, which are all at the discretion of the Principal
>     - call the parents.

(Id. ¶29).  B.L. also had a one-to-one disability aide assigned to him, Shelley Raymock, who his

mother, D.N., had repeatedly requested be replaced.  (Id. ¶¶ 32, 33).

On February 23, 2007, B.L. called Ms. Raymock a "fucking bitch" while he was in the

lunchroom eating with his friends.  Id. ¶¶ 32, 27).  Ms. Raymock escorted him to the principal's

office, and Principal Christopher Iacobelli called the Pennsylvania State Police.  (Id. ¶¶ 38-39).

Pennsylvania State Trooper Brian M. Shpock arrived at the elementary school and issued a non-

traffic citation to B.L. for disorderly conduct under 18 Pa. C.S.A. § 5503(a)(3) for calling Ms.

Raymock a "fucking bitch."  (Id. ¶ 40).  D.N. was called to pick up B.L. after the citation was

issued.  (Id. ¶ 41).  Ms. Raymock's last day assigned to B.L. was February 27, 2007.  (Compl.

¶36).

On or about April 20, 2007, Iacobelli allegedly contacted the Pennsylvania State Police

and informed them that D.N. had attempted to make contact with Ms. Raymock on BASD

grounds.  D.N. claims that this did not occur, and the Pennsylvania State Police found this allegation to be without merit.  (Id. ¶¶ 42-43).  On October 22, 2007, B.L. was found not guilty on the non-traffic citation issued February 23, 2007, for violating 18 Pa. C.S.A. § 5503(a)(3) (disorderly conduct).  (Id. ¶ 44).

Plaintiffs allege that B.L. continues to suffer severe emotional trauma proximately related to the February 23, 2007 incident, which is reasonably expected to continue indefinitely; that D.N. suffered and continues to suffer distress related to the negative impact on her relationship with B.L., proximately related to the incident; and that the harms suffered are the result of the actions Defendants have taken under color of Pennsylvania law.  (Id. ¶¶ 45-47).

Plaintiffs' seven-count Complaint alleges a malicious prosecution claim based on the Fourth Amendment brought pursuant to 42 U.S.C. § 1983 (Count I); violations of the Rehabilitation Act and Americans With Disabilities Act, 29 U.S.C. § 794 and 42 U.S.C. § 12132 et seq. (Count II); a Fourteenth Amendment Equal Protection Claim brought pursuant to 42 U.S.C. § 1983 (Count III); First and Fourteenth Amendment retaliation claims brought pursuant to 42 U.S.C. § 1983 (Count IV); a Fourteenth Amendment liberty interest claim (Count V); a state law malicious prosecution claim (Count VI); and a state law loss of consortium claim (Count VII).

### III. The Motion to Dismiss Standard.

Defendants BASD and Iacobelli have moved to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). In deciding a motion to dismiss pursuant to Rule12(b)(6), a court must "accept all factual

3

allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under a reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotations omitted) (reasoning that this statement of Rule 12(b)(6) standard remains accurate following the U.S. Supreme Court's decision in Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007)). To withstand a motion to dismiss under Rule 12(b)(6), "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 234.  This standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Id.  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Hunt v. United States Tobacco Co., 538 F.3d 217, 227 (3d Cir. 2008) (internal quotation omitted).

The "general standard for 12(b)(6) motions is modified, however, when civil rights claims are brought under 42 U.S.C. § 1983.  In such cases there is an added requirement that the 'complaint contain a modicum of factual specificity, identifying the particular conduct of defendants that is alleged to have harmed plaintif[f].'" Gines by Gines v. Bailey, No. 92-4170, 1992 WL 394512, at *2 (E.D. Pa. 2000) (quoting Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988)).  The Third Circuit has added this specificity requirement in order to "'weed out frivolous claims and those that should be heard in state court'" and "'to provide the defendant with sufficient notice of the claims asserted.'" Id. (quoting Frazier v. Southeastern Pa. Transp. Auth., 785 F.2d 65, 67 (3d Cir. 1986)).  Plaintiffs' Section 1983 claims will be analyzed pursuant to this standard.

## IV.  Discussion

Moving Defendants claim that Plaintiffs' Complaint fails to state a cause of action upon which relief can be granted and all counts should be dismissed with prejudice.  The Court will also address the issue of Defendant Iacobelli's entitlement to qualified immunity.  Following that discussion, the Court will explain why Moving Defendants are entitled to dismissal on all seven counts of the Complaint.  However, because of the Third Circuit's decision in <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (2002), the dismissal of the Complaint will be without prejudice and Plaintiffs will be granted leave to amend their complaint within thirty (30) days.

### A. Qualified Immunity

All claims should be dismissed against Principal Christopher Iacobelli because he is entitled to qualified immunity.[1]  "Qualified immunity, as the Supreme Court has explained, is the principle that 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  <u>Walter v.</u>

---

[1] The lawsuit names Iacobelli in his individual capacity.  He is entitled to qualified immunity in this respect.  If Iacobelli were named in his official capacity, the claims brought against him should be dismissed on the ground of merger of official capacity claims.  In cases arising under § 1983, "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond."  <u>Brandon v. Holt</u>, 469 U.S. 464, 471-72 (1985).  That condition was fulfilled in this case, as BASD is a party to the suit.

Pike County, Pa., 544 F.3d 182 (3d Cir. 2008) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  In short, qualified immunity shields Iacobelli from personal immunity if he "reasonably believe[d] that his . . . conduct complie[d] with the law."  Pearson et al. v. Callahan, No. 07-751, 555 U.S. ___ (2009).

Plaintiffs argue that the Court should decide whether qualified immunity applies based upon the facts, and thus qualified immunity cannot be adjudicated on Plaintiffs' Motion to Dismiss.  However, qualified immunity is a question of law for the Court to decide early in the litigation process.  Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1966).  Moreover, Plaintiffs have not alleged any facts in the Complaint which would show that Iacobelli is not entitled to qualified immunity.  The only relevant action that Plaintiffs allege that Iacobelli took is in Paragraph 39 of the Complaint, which states that "[i]nstead of following the steps outlined in the IEP and BIP, as he would for other students with such plans, Principal, Christopher Iacobelli, called the Pennsylvania State Police."

The allegation in Paragraph 39 of the Complaint ignores the plain language of the BIP, which provides that if B.L. "uses profanity", as his did against his disability aide, "he will be immediately sent to the Principal" whose list of available actions includes "other, which are all at the discretion of the Principal."  (Compl. ¶29).  Based on the broad language in the BIP, Iacobelli's action of calling the Pennsylvania State Police was within his discretion when B.L. called Ms. Raymock a "fucking bitch."  Likewise, telephoning the police to deal with a child who called his disability aide a "fucking bitch" does not constitute a clear violation of the child's constitutional rights.  It was reasonable for Iacobelli to assume that this action was in compliance with the law.

Even though all of the claims should be dismissed against Iacobelli, the Court, for the sake of completeness, will explain why all Counts of the Complaint should be dismissed against both Iacobelli and BASD.

**B. Malicious Prosecution**

Count One of Plaintiffs' Complaint alleges malicious prosecution under 42 U.S.C. § 1983 against Iacobelli and Shpock.  It is based upon Iacobelli calling Shpock instead of following the BIP or IEP and Shpock allegedly initiating a criminal proceeding without probable cause and with malicious purpose.  Count Six alleges a malicious prosecution state law claim against Iacobelli and Shpock on the same basis.

Plaintiffs have failed to plead a valid claim for malicious prosecution under § 1983.  In Pennsylvania, a plaintiff alleging malicious prosecution "must show (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice."  Merkle v. Upper Dublin School Dist., 211 F.3d 782 (3d Cir. 2000).  A plaintiff alleging malicious prosecution pursuant to Section 1983 must establish an underlying constitutional violation, "based on a provision of the Bill of Rights providing 'an explicit textual source of constitutional protection.'"  Id. (quoting Albright v. Oliver, 510 U.S. 266, 272 (3d Cir. 1994)).

Plaintiffs contend that they have established the elements required under Pennsylvania law, and predicate their Section 1983 malicious prosecution claim on a Fourth Amendment violation.  In Plaintiffs' Response to Defendants' Motion to Dismiss, Plaintiffs claim that they

have pleaded facts which are sufficient to demonstrate a seizure.  Namely, B.L. was escorted to

the principal's office; Iacobelli called the police; B.L. remained in the office until Shpock issued

B.L. a non-traffic citation for disorderly conduct; and B.L.'s mother was not called to pick him

up until Shpock issued the citation.  (Pl. Response at 6-7).

The Third Circuit has adopted a broad definition of "seizure."  See Gallo v. City of

Philadelphia, 161 F.3d 217, 222-24 (3d Cir. 1998).  However, even if the facts as noted

constituted a seizure implicating the Fourth Amendment, Plaintiffs' malicious prosecution claim

pursuant to Section 1983 and state law fail because Plaintiffs have failed to allege facts showing

that the Moving Defendants initiated a criminal proceeding or that Defendants acted maliciously

or for a purpose other than to bring Plaintiff B.L. to justice.  Moreover, the citation was issued

with probable cause.

Plaintiffs argue that the Third Circuit has recognized that a malicious prosecution claim

may stand against a school and school officials where a police officer based his finding of

probable cause to arrest on information obtained from the school official.  See Merkle, 211 F.3d

at 794-95.  While this statement of law may be accurate, the conduct of the school official in

Merkle is far different from the conduct of Iacobelli in this case.  In deciding that a malicious

prosecution claim against the School Superintendent had merit, the Merkle Court stated that the

"significant" conduct was the Superintendent calling his friend, the Chief of Police, and insisting

that charges be pressed despite the Chief of Police's urging that the matter should be handled as

an administrative, internal school district matter.  Id. at 793.  The Superintendent also

purposefully withheld information from the Chief of Police which would have negated probable

cause in that case.  Id.  The Court concluded that the "action of the School District in initiating

the criminal proceedings and pressing unfounded criminal charges against Merkle can render the District liable for its major role in a malicious prosecution."  Id. at 794.

Plaintiffs equate Iacobelli giving information to Shpock and failing to inform Shpock of B.L.'s IEP or behavioral plan with the Superintendent's actions in Merkle.  However, Plaintiffs have not alleged that Iacobelli gave Shpock any misinformation or were required to inform him of the IEP or BIP, encouraged in a misleading manner B.L.'s prosecution, or willfully withheld the IEP or behavioral plan.  Because Plaintiffs have not alleged any of these facts, it cannot be said that Iacobelli "initiated a criminal proceeding."  Under these circumstances, Trooper Shpock made the decision to initiate the criminal charges and file the citation.  Moreover, Principal Iacobelli had full discretion under the BIP to contact the police about B.L.'s use of profanity and the issuance of the citation was supported by probable cause.  No facts are alleged that Defendants acted maliciously or for a purpose other than to bring Plaintiff B.L. to justice. Therefore, Plaintiffs have failed to state a malicious prosecution claim under both federal and state law.

## C. Rehabilitation Act and the Americans with Disabilities Act

Count Two alleges a violation of the Rehabilitation Act and the Americans with Disabilities Act ("ADA") against Defendant BASD for failing to train and/or supervise its employees concerning the needs of students with disabilities, by failing to follow the BIP or IEP, and failing to establish or implement adequate policies, practices, or procedures to accommodate students with disabilities, such as B.L.

Plaintiffs' first rationale for the violations, that the BIP or IEP was not followed, is

9

without support.  As this Court has explained, Iacobelli was allowed wide discretion under the

BIP, so it cannot be tenably claimed that his call to the police violated the BIP or IEP.

Plaintiffs have alleged no facts to support their other reasons for alleging a violation of

the Rehabilitation Act or ADA, which are that BASD failed to establish or implement adequate

policies, practices, or procedures to accommodate students with disabilities, such as B.L., and

failed to train or supervise employees.  To the contrary, B.L. was receiving accommodations for

his disability.  He had a IEP and BIP and was assigned a one-on-one disability aide.  Plaintiffs

have alleged that several times between late 2006, when Raymock was assigned to B.L., and the

February 23, 2007 incident, D.N. requested that a new one-to-one aide be assigned to B.L.

(Compl. ¶33).  D.N. asked for the reassignment because Raymock and B.L. "were no longer

working well together."  (Compl. ¶35).  Plaintiff never alleged that this request for reassignment

was because Raymock was improperly trained or supervised, or that her job performance was

unacceptable.  Ms. Raymock's last day assigned to B.L. was February 27, 2007, so it appears that

BASD yielded to D.N.'s request for a new disability aide.  (Compl. ¶36).  This Court does not

see any indication from the alleged facts that BASD was not receptive to B.L.'s needs or did not

perform its full obligations under the law.  Therefore, Plaintiff's Rehabilitation Act and ADA

claims should be dismissed for failure to allege facts to show that BASD failed to establish or

implement adequate policies, practices, or procedures to accommodate students with disabilities,

such as B.L.

**D. Fourteenth Amendment Equal Protection**

Count Three of Plaintiffs' Complaint alleges a Fourteenth Amendment violation under 42

U.S.C. § 1983 against all defendants for treating B.L. differently than other similarly situated defendants.

Plaintiffs do not allege discrimination based on membership in a protected class. Thus, in order to prevail on an equal protection claim, Plaintiffs must show that Defendants treated B.L. differently than other similarly situated individuals, that Defendants did so intentionally, and that there was no rational basis for the difference in treatment. Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006). The Supreme Court has held that this standard applies to "class of one" equal protection claims. Village of Willowbrook v. Olech, 528 U.S. 562 (2000).

The Third Circuit agrees that "the Supreme Court's holding in Olech does not establish a requirement that a plaintiff identify in a complaint actual instances where others have been treated differently for purposes of equal protection." Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008) (citing DeMuria v. Hawkes, 328 F.3d 704, 707 (2d Cir. 2003). However, this relaxed standard does not enable Plaintiffs to circumvent the basic requirements that "a formulaic recitation of a cause of action's elements" is not sufficient to survive a motion to dismiss and that "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (internal citations omitted).

Count Three of Plaintiffs' Complaint is essentially a formulaic recitation of the three elements required to state an equal protection claim, which is insufficient under Twombly. Plaintiffs have not provided any factual support for the broad allegations made. First, while Plaintiffs are correct that they need not "name names" to survive a motion to dismiss, or provide actual examples of how other students were treated differently, they must allege facts from which

11

it can be deduced that B.L. was treated differently than other similarly situated defendants.  The only mention in Plaintiffs' complaint of the treatment received by other disabled students is in paragraph 39.  Paragraph 39, quoted above, alleges that Iacobelli followed the steps outlined in the IEP's and BIP's of other students, but not B.L.'s.  This Court has already rejected that Iacobelli contravened B.L.'s IEP and BIP by telephoning the State Police.  Defendants have failed to clearly allege in the Complaint what disparate treatment Plaintiffs received and any facts to show that B.L. was treated in a way that had no rational basis.

No facts are set forth by Plaintiff to suggest that the alleged discrimination was intentional.  Evidence of discrimination on the face of the Complaint is simply absent.  The Complaint also provides no facts from which the Court could deduce that Iacobelli and BASD had reason to discriminate against B.L.  Plaintiffs claim that Iacobelli and BASD retaliated against B.L. because of D.N.'s repeated requests for a new disability aide for B.L.  (Compl. ¶ 68). However, Plaintiffs never allege that Defendants reacted in a hostile fashion to these requests or the requests resulted in conflict.[2]  In fact, it appears that Defendants honored D.N.'s request. Without more than a statement that D.N. requested a new disability aide, the Court is not persuaded that these requests could be a basis for discrimination.

**E. First Amendment and Fourteenth Amendment Retaliation Claims**

Count Four of Plaintiffs' Complaint alleges a retaliation claim pursuant to 42 U.S.C. § 1983 against Iacobelli and BASD for violations of the First and Fourteenth Amendments in

---

[2] Iacobelli told D.N. in or around December 2006 that he would not be able to honor the request for a new disability aide.  But there is no allegation that this exchange was heated or that Iacobelli or any other school official expressed anger over the request.

12

retaliation for D.N.'s repeated requests that BASD assign a new one-to-one disability aide to B.L. The alleged retaliatory acts are Iacobelli initiating a criminal prosecution instead of following B.L.'s BIP or IEP and calling the State Police to complain that D.L. tried contacting Ms. Raymock on BASD grounds.

In order to state a retaliation claim, Plaintiffs must show that (1) a plaintiff engaged in a protected activity, (2) that defendants engaged in retaliatory action, and that (3) there was a causal connection between the protected activity and the action on the part of the defendants. Krouse v. American Sterilizer Co., 126 F.3d 495, 503-04 (3d Cir. 1997).

Plaintiffs allege that D.N. engaged in a protected activity by repeatedly requesting a new disability aide for B.L.; that Defendants' actions in selectively initiating a criminal proceeding against B.L. instead of following the BIP and/or IEP procedures and calling the State Police to report that D.N. had allegedly tried to contact Raymock were retaliatory actions; and that there was a causal connection.

Plaintiffs have failed to state a valid retaliation claim. They have not shown that they have suffered a retaliatory action. Under the First Amendment, a retaliatory action must, at minimum, be one that would prevent a person of ordinary firmness from expressing their right to free speech in the future. See, e.g., Karchnak v. Swatara Township, 540 F.Supp.2d 540, 548 (M.D. Pa. 2008). The Court has already explained that Defendants did not contravene the BIP or IEP in calling the police, so that action cannot constitute a retaliatory action. The act of calling the state police on or about April 20, 2007, to report that D.N. had allegedly tried to contact Raymock also does not rise to the necessary threshold.

Furthermore, even if D.N.'s requests for a new disability aide constituted a protected

activity, Plaintiffs have not alleged any facts that would suggest a causal connection between that activity and notifying the state police.  Again, there is no allegation that the exchange regarding the request was heated or that Iacobelli or any other school official expressed anger over the request.  Also, it appears that BASD agreed to replace Ms. Raymock.  Moreover, B.L.'s use of the words "fucking bitch" towards the disability aide was not use of protected speech and the Principal was within his discretion to notify police about the use of such language.

Plaintiffs have not alleged any facts specific to the Fourteenth Amendment retaliation claim.


**F. Fourteenth Amendment Liberty Interest**

Count Five alleges a Fourteenth Amendment Liberty Interest violation on behalf of Plaintiff D.N. against Iacobelli and BASD for being deprived of her fundamental right to care for and guide B.L.

Plaintiffs have not pled a valid Fourteenth Amendment liberty interest claim.  As Plaintiffs acknowledge, the right of parents to care for their children, while a protected liberty interest, is not absolute.  In order to state a Fourteenth Amendment liberty claim, there must be an underlying constitutional violation.  See Troxel v. Grantville, 530 U.S. 57 (2000).  Plaintiffs must show that the government's conduct violated procedural or substantive due process.  Croft v. Westmoreland County Children & Youth Servs., 103 F.3d 1123, 1125 (3d Cir. 1997).  Simply denying a parent information about their child's education is insufficient.  Anspatch v. City of Philadelphia, 503 F.3d 256 (3d Cir. 2007).

Plaintiffs claim that D.N.'s Fourteenth Amendment liberty claim should not be dismissed

because she should have been called before B.L. was issued a citation.  Plaintiffs have not pled

that B.L. was denied procedural due process.  Moreover, nothing in Plaintiffs' complaint rises to

the "shocks the conscience" standard required to state a substantive due process violation.  See

United Artists Theater Circuit. Inc. v. Township of Warrington, 316 F.3d 392, 399-400 (3d Cir.

2003).  Moreover, Gines by Gines v. Bailey, the case cited by Plaintiffs to establish that D.N. had

a right to be present when the police questioned B.L., is factually dissimilar.  No. 92-4170, 1992

WL 394512, at *1 (E.D. Pa. 2000).  In that case, the Court allowed the parent's alleged liberty

violation to survive a motion to dismiss where the complaint alleged that the juvenile was

violently removed from a car, struck and beaten, handcuffed, and arrested and detained without

probable cause, injured, and placed in a holding cell with adults for approximately eight hours

during which he was forbidden to contact any adult member of his family or counsel.  Id.

Plaintiff D.N. has not alleged any similar facts which would allow her to state a claim for a

Fourteenth Amendment liberty violation.


**G. Loss of Consortium**

Count Seven alleges a state law loss of consortium claim on behalf of Plaintiff D.N.

against defendant BASD for the denial of her right to the comfort, companionship and society of

her son and a result of the harm and anxiety he experienced resulting from the violation of his

constitutional and statutory rights.  Because Plaintiffs have not shown that any of B.L.'s rights

were violated, D.N. cannot state a derivative claim for loss of consortium.

15

**V.  Conclusion.**

For the foregoing reasons, the Court grants Defendant BASD and Iacobelli's Motion to Dismiss.

The Plaintiff has not sought leave to amend its complaint.  Nonetheless, "the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile."  Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).  While Plaintiff may not be able to state a claim under which relief may be granted, Plaintiff will still be afforded the opportunity to amend the Complaint within thirty (30) days in accordance with this Opinion.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| L. et al, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | NO. 08-5194 |
| | : | |
| v. | : | |
| | : | |
| BOYERTOWN AREA SCHOOL | : | |
| DISTRICT et al, | : | |
| | : | |
| Defendants. | : | |

## **ORDER**

AND NOW, this 24th day of February, 2009, upon consideration of Defendants

Boyertown Area School District and Christopher Iacobelli's Motion to Dismiss pursuant to Fed.

R. Civ. P. 12(b)(6) (Doc. No. 4) and Plaintiffs' Response (Doc. No. 5), it is ORDERED that

Defendants' Motion is GRANTED and Plaintiff's Complaint is DISMISSED WITHOUT

PREJUDICE.  Plaintiff shall be granted thirty (30) days in which to file an Amended Complaint.


BY THE COURT:


    S/ Joel H. Slomsky
                                    J.

17