IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| L. et al, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | NO. 08-5194 |
| | : | |
| v. | : | |
| | : | |
| BOYERTOWN AREA SCHOOL | : | |
| DISTRICT et al, | : | |
| | : | |
| Defendants. | : | |

**OPINION AND ORDER**

Slomsky, J.                                                                                                     July 1, 2009

**I. Introduction.**

On October 31, 2008, Plaintiffs B.L., a minor, and D.N., as parent of B.L. and in her own right, filed a complaint against Defendants Boyertown Area School District, Principal Christopher Iacobelli, and Pennsylvania State Trooper Brian M. Shpock.  Defendants Boyertown Area School District ("BASD") and Iacobelli filed a Motion to Dismiss on January 20, 2009, to which Plaintiffs filed a response on February 3, 2009.  On February 24, 2009, the Court granted BASD and Iacobelli's Motion to Dismiss, but also granted Plaintiffs leave to amend their complaint.  Defendant Shpock was not a party to this Motion to Dismiss and no ruling was made at that time on his status as a defendant.

On April 24, 2009, Plaintiffs filed an Amended Complaint (Doc. No. 11).  On April 30, 2009, Defendant Brian M. Shpock filed a Motion to Dismiss the Amended Complaint (Doc. No. 12).  On May 7, 2009, Defendants BASD and Iacobelli filed a Motion to Dismiss the Amended Complaint (Doc. No. 14).  On May 26, 2009, Plaintiffs filed a Response to Defendants BASD

1

and Iacobelli's Motion to Dismiss (Doc. No. 17).  On the same date, Plaintiffs also filed their

First Amended Complaint (Doc. No. 18).  Plaintiffs did not file a Response to Defendant

Shpock's Motion to Dismiss.  On June 1, 2009, Shpock filed a Motion to Dismiss Plaintiffs'

First Amended Complaint (Doc. No. 19).  On June 10, 2009, BASD and Iacobelli filed a Motion

to Dismiss Plaintiffs' First Amended Complaint (Doc. No. 20).

Plaintiffs filed their First Amended Complaint without first seeking leave of Court which

is required by Fed. R. Civ. P. 15(a)(2).  However, on June 10, 2009, the parties faxed to the

Court a Stipulation in which they agreed that the language which had been changed in the First

Amended Complaint would be the relevant language for deciding the motions before the Court.

Although Plaintiffs have not responded on the record to either of the Motions to Dismiss

Plaintiffs' First Amended Complaint, in view of the Stipulation, the Court will render a decision

on the Motions to Dismiss.  For reasons that follow, the Court grants Defendants BASD,

Iacobelli, and Shpock's Motions to Dismiss all claims brought against them.

## II.  General Background.

B.L. is a special needs student who attended Washington Elementary School, part of the

Defendant Boyertown Area School District.  (First Am. Compl. ¶¶ 1, 9).  He had an

Individualized Education Plan ("IEP") created under the Individuals with Disabilities Act

("IDEA") and supplemental Behavioral Intervention Plan ("BIP").  (Id. ¶¶ 12, 27).  In addition to

assisting B.L. with his academic needs, these plans were created to address B.L.'s behavioral

problems, which included frequent use of derogatory and/or inappropriate remarks.  (Id. ¶22).

Plaintiffs assert that the BIP in effect at the time of the incident, BIP Behavior #2, provided that

if B.L. used swear words, B.L. would:

> - be prompted to use his replacement strategies; lose his points for that class period on his behavior card;
> - serve 6th grade detention and write why it was inappropriate to use swear words in school and what he should have done instead;
> - have opportunity to go for a 5 minute walk outside with his one to one instructional aide after 6th grade recess is over;
> - be required to apologize to student/adult.

(Id. ¶29).  B.L. also had a one-to-one disability aide assigned to him, Shelley Raymock, who his mother, D.N., had repeatedly requested be replaced.  Plaintiffs allege that B.L.'s prior aide was "trained in ADHD and helped B.L. in his disability."  (Id. ¶¶ 32, 33).

On February 23, 2007, B.L. called Ms. Raymock a "fucking bitch" while he was in the lunchroom eating with his friends.  (Id. ¶ 37).  Ms. Raymock escorted him to the principal's office.  The Principal, Defendant Christopher Iacobelli, called the Pennsylvania State Police.  (Id. ¶¶ 38-39).  Pennsylvania State Trooper Brian M. Shpock, the other individual defendant, arrived at the elementary school and issued a non-traffic citation to B.L. for disorderly conduct pursuant to 18 Pa. C.S.A. § 5503(a)(3) based upon B.L.'s calling Ms. Raymock a "fucking bitch."  (Id. ¶ 40).  D.N. was called to pick up B.L. after the citation was issued.  (Id. ¶ 41).  Ms. Raymock's last day assigned to B.L. was February 27, 2007.  (Id. ¶ 36).

On or about April 20, 2007, Iacobelli allegedly contacted the Pennsylvania State Police and informed them that D.N. had attempted to make contact with Ms. Raymock on BASD grounds.  D.N. claims that this did not occur, and the Pennsylvania State Police found this allegation to be without merit.  (Id. ¶¶ 42-43).  On October 22, 2007, B.L. was found not guilty on the non-traffic citation issued February 23, 2007 for violating 18 Pa. C.S.A. § 5503(a)(3) (disorderly conduct).  (Id. ¶ 44).

Plaintiffs allege that B.L. continues to suffer severe emotional trauma, which is reasonably expected to continue indefinitely, proximately related to the February 23, 2007 incident; that D.N. continues to suffer distress related to the negative impact on her relationship with B.L., proximately related to the incident; and that the harms suffered are the result of actions taken by Defendants under color of Pennsylvania law.  (Id. ¶¶ 45-47).

Plaintiffs' six-count Complaint alleges a malicious prosecution claim based on the Fourth Amendment pursuant to 42 U.S.C. § 1983 (Count I); violations of the Rehabilitation Act and Americans With Disabilities Act, 29 U.S.C. § 794 and 42 U.S.C. § 12132 et seq. (Count II); a Fourteenth Amendment Equal Protection Claim brought pursuant to 42 U.S.C. § 1983 (Count III); a Fourteenth Amendment liberty interest claim (Count V); a state law malicious prosecution claim (Count VI); and a state law loss of consortium claim (Count VII).[1]

### III. The Motion to Dismiss Standard.

Defendants BASD, Iacobelli, and Shpock have moved to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under a reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotations omitted) (reasoning that this statement of Rule 12(b)(6) standard remains acceptable

---

[1] In Plaintiffs' original Complaint, First and Fourteenth Amendment retaliation claims were brought pursuant to 42 U.S.C. § 1983 in Count IV.  This Count is omitted in Plaintiffs' First Amended Complaint.

following U.S. Supreme Court's decision in <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 544 (2007)).  To withstand a motion to dismiss under Rule 12(b)(6), "factual allegations must be enough to raise a right to relief above the speculative level."  <u>Phillips</u>, 515 F.3d at 234.  When a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  <u>Ashcroft v. Iqbal</u>, 129 S. Cr. 1937, 1950 (2009) (reaffirming rationale set forth in <u>Twombly</u>).  However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  <u>Id.</u> at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  <u>Id.</u>

The "general standard for 12(b)(6) motions is modified, however, when civil rights claims are brought under 42 U.S.C. § 1983.  In such cases there is an added requirement that the 'complaint contain a modicum of factual specificity, identifying the particular conduct of defendants that is alleged to have harmed plaintif[f].'"  <u>Gines by Gines v. Bailey</u>, No. 92-4170, 1992 WL 394512, at *2 (E.D. Pa. 2000) (quoting <u>Colburn v. Upper Darby Twp.</u>, 838 F.2d 663, 666 (3d Cir. 1988)).  The Third Circuit has added this specificity requirement in order to "'weed out frivolous claims and those that should be heard in state court'" and "'to provide the defendant with sufficient notice of the claims asserted.'"  <u>Id.</u> (quoting <u>Frazier v. Southeastern Pa. Transp. Auth.</u>, 785 F.2d 65, 67 (3d Cir. 1986)).  Plaintiffs' Section 1983 claims will be analyzed pursuant to this standard.

**IV.  Discussion**.

In dismissing Plaintiffs' original Complaint against BASD and Iacobelli, the Court found that Iacobelli was entitled to qualified immunity and Plaintiffs failed to state a cause of action under which relief could be granted under any Count brought against BASD and Iacobelli. Plaintiffs assert that their Amended Complaint "adequately cures deficiencies in the original Complaint and states a cause of action upon which relief can be granted."  (Pl. Response ¶ 5).

Plaintiffs' First Amended Complaint is materially different from Plaintiffs' original Complaint in two ways.  First, Plaintiffs' original Complaint referenced an IEP that Plaintiffs now claim was not in place at the time of the February 2007 incident.  (Id. ¶ 6).  That IEP provided that if B.L. used profanity, he would be immediately taken to the Principal, who could take actions including any "other, which are all at the discretion of the Principal."  (Compl. ¶ 29). Plaintiffs now assert that this language did not appear in the relevant IEP.  Second, Plaintiffs' First Amended Complaint asserts that "B.L.'s previous aide was trained in ADHD and helped B.L. in his disability."  (First Am. Compl. ¶ 33).  Plaintiffs' original Complaint did not contain this language.  The Court will review Defendant Iacobelli's entitlement to qualified immunity. The Court will then revisit each of the Counts of the First Amended Complaint in light of Plaintiffs' amendments to their Complaint.


**A. Qualified Immunity**

All claims should be dismissed against Principal Christopher Iacobelli because he is

entitled to qualified immunity.[2]  "Qualified immunity, as the Supreme Court has explained, is the principle that 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Walter v. Pike County, Pa., 544 F.3d 182 (3d Cir. 2008) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  In short, qualified immunity shields individual Defendants from personal immunity if they "reasonably believe[d] that [their] . . . conduct complie[d] with the law."  Pearson et al. v. Callahan, No. 07-751, 555 U.S. ___ (2009).

     In Plaintiffs' Response to Iacobelli's Motion to Dismiss Plaintiffs' Amended Complaint,[3] Plaintiffs do not assert that the amendments to their Complaint strip Iacobelli of his qualified immunity.  Telephoning the police to deal with a child who called his disability aide a "fucking bitch" does not constitute a clear violation of the child's constitutional rights.  The assertion that the procedures in place did not specifically grant Iacobelli discretionary authority does not undermine this determination.  Plaintiffs have set forth no evidence to indicate that the actions available to a school administrator under B.L.'s BIP Behavior #2 were an exclusive list of the

---

    [2] The lawsuit names Iacobelli in his individual capacity.  He is entitled to qualified immunity in this respect.  If Iacobelli were named in his official capacity, the claims brought against him should be dismissed on the ground of merger of official capacity claims.  In cases arising under § 1983, "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond."  Brandon v. Holt, 469 U.S. 464, 471-72 (1985).  That condition was fulfilled in this case, as BASD is a party to the suit.

    [3] Because Plaintiffs did not file a Response to BASD and Iacobelli's Motion to Dismiss Plaintiffs' First Amended Complaint, the Court will consider Plaintiffs' Response to their Motion to Dismiss Plaintiffs' Amended Complaint where applicable.

actions available to him.  It was reasonable for Iacobelli to assume that the action of notifying the

police of B.L.'s conduct was not a violation of the law.

Accordingly, Iacobelli is entitled to qualified immunity and dismissal of all counts against

him.[4]  Nonetheless, the Court, for the sake of completeness, will explain why all Counts of the

Complaint should be dismissed against Iacobelli as well as BASD and Shpock.

**B. Section 1983 and State Law Malicious Prosecution Claims**

Count One of Plaintiffs' Complaint alleges malicious prosecution under 42 U.S.C. §

1983, predicated upon an underlying Fourth Amendment violation, against Defendants Iacobelli

and Shpock.  It is based upon Iacobelli calling Shpock instead of following the BIP or IEP and

Shpock allegedly initiating a criminal proceeding without probable cause and with malicious

purpose.  Count Six alleges a malicious prosecution state law claim against Iacobelli and Shpock

on the same basis.

Plaintiffs have failed to plead a valid claim for malicious prosecution under § 1983 and

state law.  In Pennsylvania, a plaintiff alleging malicious prosecution "must show (1) the

defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's

favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted

---

[4] As a state official who carries out administrative functions, Defendant Shpock was
eligible to assert qualified immunity regarding B.L.'s federal claims.  See, e.g., Broussea v.
Haugen, 543 U.S. 194, 197 (2004).  The Supreme Court has stressed that a police officer's
conduct is shielded by the doctrine of qualified immunity even if the officer "makes reasonable
mistakes about what the law requires."  Saucier v. Katz, 533 U.S. 194, 2005 (2001).  However,
qualified immunity is an affirmative defense that is waived if not pleaded.  See, e.g., DiLoreto v.
Borough of Oaklyn, 744 F.Supp. 610, 616 (D.N.J. 1990) (citing Gomez v. Toledo, 446 U.S. 635,
640 (1980)).  Defendant Shpock did not raise the defense of qualified immunity in his motion to
dismiss the complaint.  Accordingly, he has waived the defense.

maliciously or for a purpose other than bringing the plaintiff to justice." Merkle v. Upper Dublin School Dist., 211 F.3d 782 (3d Cir. 2000). A plaintiff alleging malicious prosecution pursuant to Section 1983 must establish an underlying constitutional violation, "based on a provision of the Bill of Rights providing 'an explicit textual source of constitutional protection.'" Id. (quoting Albright v. Oliver, 510 U.S. 266, 272 (3d Cir. 1994)). As noted, Plaintiffs allege a Fourth Amendment violation.

The Court dismissed Plaintiffs' original Section 1983 and state law malicious prosecution claims against Iacobelli on the basis that Plaintiffs failed to allege facts showing that Iacobelli initiated a criminal proceeding, acted maliciously, or acted for a purpose other than to bring Plaintiff B.L. to justice and that the citation was issued with probable cause.[5] Plaintiffs' First Amended Complaint does not correct these deficiencies. Plaintiffs have still failed to allege that Iacobelli gave Shpock any misinformation or was required to inform him of the IEP or BIP, encouraged in a misleading manner B.L.'s prosecution, or willfully withheld the IEP or behavioral plan. Because Plaintiffs have not alleged any of these facts, it cannot be said that

---

[5] Because Plaintiffs predicate their Section 1983 malicious prosecution claim on a Fourth Amendment violation, they must plead facts which are sufficient to demonstrate a seizure. In order to demonstrate that B.L. was seized, Plaintiffs have pled: B.L. was escorted to the principal's office; Iacobelli called the police; B.L. remained in the office until Shpock issued B.L. a non-traffic citation for disorderly conduct; and B.L.'s mother was not called to pick him up until Shpock issued the citation. The Third Circuit has adopted a broad definition of "seizure." See Gallo v. City of Philadelphia, 161 F.3d 217, 222-24 (3d Cir. 1998). However, it appears that there was no deprivation of B.L.'s liberty interest that rises to the level of a Fourth Amendment violation. The actions here do not seem more intrusive than required attendance at a court proceeding, and it is settled law in this circuit that such required attendance does not constitute a seizure. See, e.g., DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2007); Hanks v. County of Delaware, 518 F.Supp.2d 642, 651 (E.D. Pa. 2007); Alvarez Castro v. Negron, 475 F.Supp.2d 147, 152 (D. P.R. 2007).

Iacobelli "initiated a criminal proceeding" or acted maliciously or for a purpose other than to bring Plaintiff B.L. to justice. Plaintiffs have not alleged any facts in their First Amended Complaint to alter the Court's prior determination that the citation was issued with probable cause.[6] Therefore, Plaintiffs have failed to state a malicious prosecution claim against Iacobelli under both federal and state law.

Plaintiffs' Section 1983 and state law malicious prosecution claims against Defendant Shpock fail because the citation was issued with probable cause and Plaintiffs have not asserted any facts to show that Shpock acted maliciously or for a purpose other than to bring Plaintiff B.L. to justice. The state law malicious prosecution claim fails for the additional reason that sovereign immunity bars the claim against Shpock, a Pennsylvania State Trooper. Under Pennsylvania law, the doctrine of sovereign immunity bars tort claims against the Commonwealth, its officials, and employees when acting within the scope of their duties. 1 Pa.C.S.A. § 2310. The legislature delineated only nine exceptions to the statute, and those exceptions are to be "strictly construed and narrowly tailored."[7] Brown v. Blaine, 833 A.2d

---

[6] Profane language aimed at public officials has been the basis for writing disorderly conduct citations in many instances. See, e.g., Commonwealth v. Hock, 696 A.2d 225 (Pa. Super. 1997) (finding that defendant's statement of "Fuck you" to police officer constituted fighting words); Commonwealth v. Pringle, 450 A.2d 103 (Pa. Super. 1982) (holding that one may be charged with disorderly conduct for shouting "goddamn fucking pigs" and insults at public officials). Although courts have differed on whether profane language is sufficient for a disorderly conduct conviction, it is clear from these cases that the issuance of the citation for use of such profane language is supported by probable cause.

[7] "The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by": (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) national Guard activities; and (9) toxoids and vaccines. See 42 Pa.C.S.A. § 8522(b).

1166, 1173 (Pa. Cmwlth. 2003).  Malicious prosecution does not fall within any exception.

Pursuant to § 2310, a Commonwealth employee is entitled to sovereign immunity only when the employee is acting within the scope of his duties.  1 Pa.C.S.A. § 2310.  Conduct of an employee is therefore protected when: (1) it is of a kind that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is calculated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, it is not unexpected by the employer.  Revak v Lieberum, 2008 WL 4858291, at *4 (W.D.Pa. Nov. 10, 2008); see also Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000), citing Restatement (Second) Agency § 228.  Issuing B.L. a non-traffic citation was an act within the scope of Trooper Shpock's duties.  Accordingly, Defendant Shpock is entitled to dismissal of B.L's state law malicious prosecution claim for the additional reason that sovereign immunity bars the claim.

In sum, the Section 1983 and state law malicious prosecution claims against Iacobelli fail because Plaintiffs have not pled facts to show that Iacobelli initiated a criminal proceeding, that the proceeding was initiated without probable cause, or that Iacobelli acted maliciously or for a purpose other than bringing the plaintiff to justice.  The Section 1983 and state law malicious prosecution claims against Shpock fail because Plaintiffs have not pled facts to show that the proceeding was initiated without probable cause or that Shpock acted maliciously or for a purpose other than bringing the plaintiff to justice.  The state law malicious prosecution claim against Shpock also fails because sovereign immunity bars the claim.

11

**C. Rehabilitation Act and the Americans with Disabilities Act**

Count Two alleges a violation of Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act ("ADA") against Defendant BASD for failing to train and/or supervise its employees concerning the needs of students with disabilities, by failing to follow the BIP or IEP, and failing to establish or implement adequate policies, practices, or procedures to accommodate students with disabilities, such as B.L.

Plaintiffs have not stated a claim under either the Rehabilitation Act or the ADA.  The Court's analysis regarding the validity of B.L's ADA and Section 504 claims are similar.  See New Dir. Treatment Serv.'s v. City of Reading, 490 F.3d 293, 302 (3d Cir.2007) (stating that the two claims are often analyzed together).  The statutes, however, have different requirements regarding causation.  The Rehabilitation Act provides, in relevant part, that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be . . . subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  A plaintiff must, in addition to showing that he was discriminated against solely because of his disability, show that the discrimination reflected bad faith or gross misjudgment.  M.P. v. Ind. Sch. Dist. No. 721, 439 F.3d 865, 868 (8th Cir. 2006).  The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be . . . denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  In contrast to the "solely because" standard of the Rehabilitation Act, the ADA requires a "but for" causation.  See Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 157-58 (3d Cir.1995)).

Plaintiffs have failed to allege facts which demonstrate that B.L. suffered any

discrimination.  Plaintiffs do not claim that the alleged discrimination amounted to bad faith or gross misjudgment.  Plaintiffs have alleged two bases for discrimination.  First, Plaintiffs allege that B.L.'s BIP or IEP was not followed.  As this Court has explained, Plaintiffs have not alleged that B.L.'s BIP was an exclusive list of actions available to Iacobelli or that Iacobelli was forbidden to contact the police as a method to cope with a severely disruptive student.  Iacobelli's decision to contact the police does not constitute discrimination, and does not reflect bad faith or gross misjudgment.  Furthermore, Plaintiffs have not pled that this conduct occurred solely because of B.L.'s disability or would not have occurred but for his disability.

Plaintiffs second alleged basis for discrimination is that BASD failed to establish or implement adequate policies, practices, or procedures to accommodate students with disabilities, such as B.L., and failed to train or supervise employees.  This Court originally dismissed this claim on the basis that B.L. was receiving accommodations for his disability, including an IEP, BIP, and assignment of a one-to-one disability aide, and that Plaintiffs had not alleged that any employee had received improper training.  Plaintiffs' First Amended Complaint adds the language that "B.L.'s previous aide was trained in ADHD and helped B.L. in his disability." Plaintiffs do not assert that Shelley Raymock, B.L.'s disability aide at the time of the incident, was not trained in ADHD and did not help B.L. with his disability.  Furthermore, Plaintiffs' claim fails because even if Raymock was not properly trained, Plaintiffs have not alleged that BASD was required to provide B.L. with an aide specifically trained in ADHD or that her lack of training was proximately related to any damages suffered by Plaintiffs.  The only other BASD employee mentioned in Plaintiffs' Complaint is Iacobelli, and Plaintiffs do not allege any facts to show that he was improperly trained.

Accordingly, Plaintiffs' Rehabilitation Act and ADA claims should be dismissed for failure to allege facts to show discrimination amounting to bad faith or gross misjudgment or that any damages were proximately related to the claims of discrimination.

**D. Fourteenth Amendment Equal Protection**

Count Three of Plaintiffs' Complaint alleges a "class of one" Fourteenth Amendment violation under 42 U.S.C. § 1983 against all defendants for treating B.L. differently than other similarly situated defendants.

Plaintiffs do not allege discrimination based on membership in a protected class.  Thus, in order to prevail on an equal protection claim, Plaintiffs must show that (1) Defendants treated B.L. differently than other similarly situated individuals, (2) that Defendants did so intentionally, and (3) that there was no rational basis for the difference in treatment.  Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).  The Supreme Court has held that this standard applies to "class of one" equal protection claims.  Village of Willowbrook v. Olech, 528 U.S. 562 (2000).

The Third Circuit agrees that "the Supreme Court's holding in Olech does not establish a requirement that a plaintiff identify in a complaint actual instances where others have been treated differently for purposes of equal protection."  Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008) (citing DeMuria v. Hawkes, 328 F.3d 704, 707 (2d Cir. 2003).  However, this relaxed standard does not enable Plaintiffs to circumvent the basic requirements that "a formulaic recitation of a cause of action's elements" is not sufficient to survive a motion to dismiss and that "[f]actual allegations must be enough to raise a right to relief above the speculative level on the

14

assumption that all of the complaint's allegations are true." Bell Atlantic Corp. v. Twombly, 550

U.S. 544 (2007) (internal citations omitted).

The Court granted Iacobelli and BASD's Motion to Dismiss Plaintiffs' Original

Complaint because it was essentially a formulaic recitation of the three elements required to state

an equal protection claim, which is insufficient under Twombly and Iqbal. See also Revak v.

Lieberum, No. 08-691, 2008 WL 4858291 (W.D. Pa. Nov. 10, 2008) (explaining that the

Plaintiff's Complaint, which "did not contain any factual allegations concerning [the Equal

Protection class-of-one] elements" but only "a bald assertion and legal conclusion that Plaintiff

was deprived of his right to equal protection" was insufficient to state a claim). The Court, in its

February 24, 2009 Opinion and Order, explained that Plaintiffs could not survive a Motion to

Dismiss unless they clearly alleged what disparate treatment Plaintiffs received, facts to show

that B.L. was treated in a way that had no rational basis, and facts which demonstrate that the

alleged discrimination was intentional. Plaintiffs did not heed these instructions, and their First

Amended Complaint therefore suffers from the same deficiencies as their original Complaint.

The same deficiencies also exist in their allegations against Shpock. Consequently, Plaintiffs'

Equal Protection claims will also be dismissed.


**E. Fourteenth Amendment Liberty Interest**

Count Five alleges a Fourteenth Amendment liberty interest violation on behalf of

Plaintiff D.N. against Iacobelli and BASD for being deprived of her fundamental right to care for

and guide B.L. As the Court explained in its February 24, 2009 Opinion and Order, Plaintiffs

must show that the government's conduct violated procedural or substantive due process. Croft

v. Westmoreland County Children & Youth Servs., 103 F.3d 1123, 1125 (3d Cir. 1997).

Plaintiffs have not pled that B.L. was denied procedural due process.  The Court held that

nothing in Plaintiffs' complaint rises to the "shocks the conscience" standard required to state a

substantive due process violation.  See United Artists Theater Circuit, Inc. v. Township of

Warrington, 316 F.3d 392, 399-400 (3d Cir. 2003).  This assessment remains valid even in light

of the changes made to Plaintiffs' First Amended Complaint.


**F. Loss of Consortium**

Count Seven alleges a state law loss of consortium claim on behalf of Plaintiff D.N.

against defendant BASD for the denial of her right to the comfort, companionship and society of

her son and a result of the harm and anxiety he experienced resulting from the violation of his

constitutional and statutory rights.  Because Plaintiffs have not shown that any of B.L.'s rights

were violated, D.N. cannot state a derivative claim for loss of consortium.


**V.  Conclusion.**

For the foregoing reasons, the Court will grant Defendants BASD, Iacobelli, and

Shpock's Motions to Dismiss on all claims.  Because Plaintiffs have already been allowed leave

to amend, this dismissal is with prejudice.

An appropriate Order follows.